UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EVER BETTER EATING, INC.,**

**Plaintiff,**

vs.

CASE NO.: _____

**JAMA'S EXPRESS LLC, AND COYOTE LOGISTICS, LLC.,**

**Defendants.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Ever Better Eating, Inc., ("EBEI," "Rustic Crust" [1] or simply "Plaintiff"), sues Defendants, Jama's Express LLC and Coyote Logistics, LLC ("Defendants"), and alleges:

**PARTIES, JURISDICTION, & VENUE**

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 1337 as this action arises from the carriage of goods in interstate commerce, and is governed by federal statutes, including but not limited to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §

---

[1] Ever Better Eating, Inc. is a subsidiary of Rustic Crust, Inc. Both corporations have the same mailing address and the same principal place of business. Both corporations were used interchangeably on the motor carrier contract and bill of lading. EBEI has been identified as the "Shipper" and is therefore listed as Plaintiff here.

14706. Concurrently, there is pendent and supplemental jurisdiction as to certain aspects of the claim in suit. Pendent and supplemental jurisdiction exist as the Florida common-law negligence claims are directly related to and arise from the same set of operative facts of the federal claim alleged under the Carmack Amendment.[2] This is an action seeking recovery of damages due to Defendants' failure to properly deliver a truckload of frozen pizzas, resulting in rejection of the goods by the purchaser, as described more fully below.

2. At all times, material to this action, Plaintiff was, and is, a New Hampshire corporation with its principal place of business located in New Hampshire.

3. At all times, material to this action, Plaintiff was the bailor of the shipment that is the subject of this action.

4. At all times, material to this action, Jama's Express LLC ("Jama's") was a Florida limited liability company with its principal place of business located in Orange County, Florida.

---

[2] Federal Question Jurisdiction, 28 U.S.C. § 1331, applies to this claim. Diversity Jurisdiction potentially also exists under 28 U.S.C § 1332, but is dependent upon the specific citizenships of Defendants' LLC members, which, as adverse parties, is presently unknown and would require Jurisdictional Discovery.

5. At all times, material to this action, Coyote Logistics, LLC ("Coyote") was a Delaware limited liability company with its principal place of business located in Chicago, Illinois.

6. At all times, material to this action, Jama's was a carrier or freight forwarder within the meaning of the Carmack Amendment; and/or broker, or other transportation provider for carriage of goods by road for hire.

7. At all times, material to this action, Coyote was a carrier, or freight forwarder within the meaning of the Carmack Amendment; and/or broker or other transportation provider for carriage of goods by road for hire.

8. Pursuant to 49 U.S.C. § 14706(d), venue is proper. A civil action under § 14706 may be brought against a carrier in a district court of the United States or in a State Court through which the defendant carrier operates or where such loss or damage is alleged to have occurred. Venue is appropriate in the Middle District of Florida, Tampa Division because both Jama's and Coyote operate in Lakeland, Florida. Additionally, venue is proper in the Middle District of Florida, Tampa Division as the loss or damage to the Shipment occurred in Lakeland, Florida, located in Polk County.

9. Alternatively, pursuant to 28 U.S.C. § 1391, venue is proper. A civil action may be brought, under 28 U.S.C. § 1391 in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated. Here, the Shipment was situated in Lakeland, Florida, and a substantial part of the claim, the delivery of the shipment, occurred in Lakeland, Florida. Thus, venue is proper in the Middle District of Florida, Tampa Division.

## GENERAL ALLEGATIONS

10. On or about August 20, 2020, Coyote sent, and Jama's signed and returned, a Rate Confirmation document acknowledging that Jama's would transport a shipment at the required temperature and otherwise as required by Plaintiff. A true and accurate copy of this document is attached hereto as Exhibit A.

11. In consideration of certain agreed freight charges paid, Defendants agreed to transport a shipment of frozen pizzas from Plaintiff's factory in Pittsfield, New Hampshire, to Burris Logistics in Lakeland, Florida, in good order and condition ("Shipment").

12. Defendants expressly agreed to keep the Shipment at a "continuous" temperature of minus ten degrees Fahrenheit (-10 F).

13. The Rate Confirmation specifically provided that "THIS LOAD SHALL NOT BE DOUBLE BROKERED."

14. On that same date, Defendants'[3] driver and/or agent signed the Bill of Lading and the count sheet on Defendants' behalf. A true and accurate copy of this document is attached hereto as Exhibit B.

15. Defendants, either directly and/or through an agent, then accepted and received the Shipment, in good order and condition, and began to transport it to Florida.

16. The Shipment did not arrive at its destination in good order and condition because Defendants, and/or their agents, did not maintain the Shipment at the appropriate temperature, in violation of Defendants' obligations and duties.

17. Because the temperature of the load was not properly maintained, the entire contents of the Shipment spoiled and were unsuitable for human consumption and otherwise were not in good order and/or condition, were rejected by the Buyer

18. Defendants acted negligently, grossly negligently, recklessly, and/or engaged in willful misconduct by willfully, wantonly, and recklessly disregarding its duties as a carrier, freight forwarder, and/or other transportation provider in the safekeeping and transport of the Shipment, and otherwise materially deviated from their duties, including but not limited to the following:

---

[3] The Bill of Lading and Shipping Log list Coyote as the Carrier. The Rate Confirmation lists Jama's Express LLC as Carrier.

    (a)    Jama's represented that it would ensure that its truck was loaded, that its truck was screened and contracted, and that it would provide a dependable truck.

    (b)    Defendants represented that they would provide quality service and on-time delivery all at the required temperature and that would be responsible for loss or damage to any of Plaintiff's items being transported.

    (c)    Instead, Defendants either failed to properly transport and deliver the Shipment, or allowed the Shipment to be controlled by another that either acted on its behalf or appeared to be acting on its behalf.

    (d)    Defendants either hired another trucker, or the trucker was their employee and/or agent and/or apparent agent, who actually carried – but did not properly deliver the Shipment and/or otherwise failed to deliver the Shipment in good order and/or condition.[4]

---

[4] A company by the name of Fastway Transport, LLC is mentioned after the fact, but it is not known what role, if any, it played. In any event, the Agreement by EBEI neither contemplated nor allowed a third party to be involved with the shipment of its products. Accordingly, either Coyote, or Jama's, or both, bear the responsibility for any acts or failure to act by third parties.

19. Defendants then donated the Shipment rather than destroying it as directed by Plaintiff.

20. All conditions precedent have been performed, have occurred, or have been waived.

21. Due to Defendants' actions as described herein, Plaintiff has sustained damages of at least $78,981.92, plus interest, costs, and attorney's fees.

## COUNT ONE: JAMA'S BREACH OF CONTRACT
## AND/OR DUTIES UNDER THE CARMACK AMENDMENT

22. Plaintiff incorporates paragraphs 1-20 above as if fully set forth herein.

23. As described above, Jama's was a carrier of merchandise and/or freight forwarder within the meaning of Carmack Amendment, 49 U.S.C § 14706, and accordingly had duties and obligations to EBEI under that law and/or under the law of carriage.

24. Jama's breached its duties as such under that law and/or under the contract of carriage.

25. Jama's conduct in misdelivering the Shipment also constitutes a conversion and/ or material deviation of its contractual obligations.

26. Jama's breached its obligations to provide transportation or service under the contract and/or receipt or bill of lading.

27. Due to Jama's breaches, EBEI suffered actual loss or injury to the Shipment.

28. Plaintiff demands judgment for damages of at least $78,981.92, plus interest, costs, and attorney's fees.

### COUNT TWO: JAMA'S BREACH OF BAILMENT OBLIGATIONS

29. Plaintiff incorporates paragraphs 1-20 above as if fully set forth herein.

30. Jama's was acting as a bailee of or otherwise had a duty of care for the Shipment at the time of loss or damage.

31. Defendants thereby, or through its contractors, agents, apparent agents, servants, or sub-bailees, each of whom warranted, or had a duty to safely keep, care for, and deliver the Shipment in the same good order and condition as when entrusted to it and to perform services as agreed or to ensure that those services were performed with reasonable care an in a non-negligent and workmanlike manner.

32. Jama's failed to exercise due care to safeguard the bailed property from damage and breached its obligations and negligently failed to deliver to Burris Logistics the Shipment in the same good order and condition as when entrusted to it.

33. The breaches by Jama's caused harm and damages to Plaintiff.

34. Plaintiff demands judgment for the damages of at least $78,981.92, plus interest, costs, and attorney's fees.

## COUNT THREE: TORT CLAIMS AGAINST JAMA'S

35. Plaintiff incorporates paragraphs 1-20 above as if fully set forth herein.

36. Jama's owed Plaintiff a duty to transport the products in the manner promised and deliver (1) the Shipment at its destination in the same good order and condition as when received.

37. Jama's, by its negligence, gross negligence, recklessness, and/or willfulness, damaged and/or failed to deliver the Shipment in the same good order and condition as when entrusted to it.

38. Jama's breaches caused EBEI to suffer actual loss or injury as a result of the spoliation of the Shipment.

39. Due to Jama's breaches, Plaintiff demands judgment for damages of at least $78,981.92, plus interest, costs, and attorney's fees.

## COUNT FOUR: ALTERNATIVE BREACH OF CONTRACT AGAINST JAMA'S

40. Plaintiff incorporates paragraphs 1-20 above as if fully set forth herein.

41. Should Jama's be found not to be the carrier, Jama's breached its duties and obligations under the contract to Plaintiff, including but not limited to the following:

    (a)    Ensuring that its truck was loaded, screened, and contracted;

    (b)    Ensuring the provision of a dependable truck;

    (c)    Monitoring the truck's progress from pickup through delivery;

    (d)    Ensuring quality service and appropriate temperature controls;

    (e)    Assuming the responsibility for those loss of damage of the Shipment; and,

    (f)    Causing or allowing an unqualified and/or unauthorized third party to take possession of the Shipment.

42. Jama's breaches caused harm and/or damages to Plaintiff.

43. Plaintiff demands judgment for damages of at least $78,981.92, plus interest, costs, and attorney's fees.

### COUNT FIVE: COYOTE'S BREACH OF CONTRACT AND/OR DUTIES UNDER THE CARMACK AMENDMENT

44. Plaintiff incorporates paragraphs 1-20 above as if fully set forth herein.

45. By agreeing to transport Plaintiff's Shipment from Pittsfield, New Hampshire, to Burris Logistics in Lakeland, Florida, Coyote agreed to act as an interstate motor carrier of merchandise for hire and is thus subject to the Carmack Amendment regardless of the fact that it is a licensed U.S. DOT as a cargo broker.

46. As an interstate motor carrier of merchandise for hire, Coyote thereby, or though it contractors, agents, apparent agents, servants, or sub-bailees, had a duty to safely keep, care for, and deliver the Shipment in the same good order and condition as when entrusted to them.

47. Coyote breached those obligations by allowing the Shipment to spoil.

48. Due to Coyote's breaches, Plaintiff suffered actual damage or injury to the Shipment.

49. Plaintiff demands judgment for the damages of at least $78,981.92, plus interest, costs, and attorney's fees.

### COUNT SIX: NEGLIGENCE OF COYOTE

50. Plaintiff incorporates paragraphs 1-20 above as if fully set forth herein.

51. In the event Coyote is held to be a freight broker not subject to the Carmack Amendment, as a freight broker, Coyote owed Plaintiff the duty to exercise reasonable care in selecting, approving, and hiring the inland carrier to carry the Shipment to ensure (1) that the Shipment either arrived at its destination in the same good order and condition as when received by the inland carrier or (2) in the event of the Shipment's loss or damage, Plaintiff was properly compensated for the loss of or damage to said Shipment.

52. Coyote solicited, selected, retained, approved, and hired the inland carrier to carry the Shipment.

53. Coyote selected an unqualified or unauthorized carrier to deliver Plaintiff's Shipment.

54. Plaintiff played no role in the solicitation, selection, retention, approval, or contracting of the inland carrier.

55. At all relevant times, Plaintiff relied on Coyote to inquire into, investigate, know, verify, and approve inland carrier's qualifications and fitness to transport the Shipment safely and reliably and to compensate Plaintiff in the event of a loss.

56. Coyote breached its duty by allowing the Shipment to spoil.

57. Coyote breached its duty by negligently or recklessly substituting an unqualified or unauthorized carrier to transport the Shipment resulting in rejection of the products by the Buyer.

58. The loss of the Shipment in suit was caused in whole or in part by Coyote's negligent failure to provide and/or arrange for proper care of the Shipment at all times during transport, including but not limited to, failure to select and properly screen the inland carrier and drivers, failure to authenticate the carrier, failure to follow rules, practices and procedures, failure to have adequate and

appropriate rules, practices and procedures in place to prevent the loss at issue, and failure to exercise a reasonable degree of care under the circumstances.

59. As a direct and proximate cause of Coyote's negligence, Plaintiff sustained damages of at least $78,981.92, plus interest, costs, and attorney's fees.

## **DEMAND FOR JURY TRIAL**

60. Plaintiff hereby demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff demands judgment against Defendants for $78,981.92, plus interest, costs, attorney's fees, and such other and further relief the Court deems proper.

Dated:  July 23, 2021        s/ Larry D. Smith
　　　　　　　　　　　　　　　LARRY D. SMITH (Lead Trial Counsel)
　　　　　　　　　　　　　　　Florida Bar No.:  442331
　　　　　　　　　　　　　　　E-mail:  lsmith@rumberger.com (primary)
　　　　　　　　　　　　　　　　　　　　docketingorlando@rumberger.com and
　　　　　　　　　　　　　　　　　　　　lsmithsecy@rumberger.com (secondary)
　　　　　　　　　　　　　　　JENNIFER SMITH THOMAS
　　　　　　　　　　　　　　　Florida Bar No.:  59797
　　　　　　　　　　　　　　　E-mail:  jthomas@rumberger.com (primary)
　　　　　　　　　　　　　　　　　　　　docketingorlando@rumberger.com and
　　　　　　　　　　　　　　　　　　　　jthomassecy@rumberger.com (secondary)
　　　　　　　　　　　　　　　Rumberger, Kirk, & Caldwell, P.A.
　　　　　　　　　　　　　　　300 South Orange Avenue, Suite 1400
　　　　　　　　　　　　　　　P.O. Box 1873 (32802)
　　　　　　　　　　　　　　　Orlando, Florida 32801
　　　　　　　　　　　　　　　Tel:  407.872.7300
　　　　　　　　　　　　　　　Fax:  407.841.2133
　　　　　　　　　　　　　　　*Attorneys for Plaintiff, Ever Better Eating, Inc.*