**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

EVER BETTER EATING, INC.,

     Plaintiff,

v.                                                   Case No: 8:21-cv-1798-CEH-CPT

JAMA'S EXPRESS LLC, COYOTE
LOGISTICS, LLC, EVENS MITILUS,
FASTWAY TRANSPORT, LLC and
JUNIOR BORGELLA,

     Defendants.

_____

**<u>ORDER</u>**

This matter comes before the Court on the Motion to Dismiss of Defendants Jama's Express LLC and Junior Borgella (Doc. 35), Plaintiff Ever Better Eating, Inc.'s Response in Opposition (Doc. 37), and Defendants' Reply (Doc. 41). In the motion, Defendants move to dismiss each count against them on a variety of grounds, including preemption by the Carmack Amendment and the Federal Aviation Administration Authorization Act. Defendants also move to strike various portions of the Amended Complaint.

Upon full consideration and review, the Court will dismiss the Amended Complaint as a shotgun pleading, and otherwise grant-in-part and deny-in-part the motion.

## I.    BACKGROUND

In August 2020, Plaintiff Ever Better Eating, Inc., sent a shipment of frozen pizzas from its factory in Pittsfield, New Hampshire to Lakeland, Florida. Doc. 30 ¶¶ 16-17.   The pizzas arrived spoiled because their temperature was not properly maintained during transport. *Id.* ¶¶ 22-23.   As a result, Plaintiff sustained a loss of $78,981.92, the total value of the shipment. *Id.* ¶¶ 23, 27.

Plaintiff alleges that several entities were responsible for the shipment.  A Bill of Lading dated August 20, 2020, lists Coyote Logistics, LLC, as the "Carrier" of a shipment of frozen pizzas from Pittsfield to Lakeland. Doc. 30-2.  Another contract, the Rate Confirmation, lists Coyote as the broker of the same shipment. Doc. 30-1 at 3.  The contract is signed by Junior Borgella and identifies Jama's Express, LLC, as the carrier. *Id.*  Plaintiff alleges that the shipment was actually carried by a third party called Fastway Transport, LLC, and Evens Militus, without Plaintiff's authorization or knowledge. Doc. 30 ¶¶ 24, 88; *see* Doc. 30-1 at 4 (prohibiting "double-brokering"). Plaintiff has filed suit against Coyote, Jama's, Borgella, Fastway, and Militus, alleging that they are each liable for breaching their duties toward the shipment and causing its loss.

Counts I and V allege that Jama's and Coyote, respectively, breached their contract or duties under the Carmack Amendment by agreeing to act as the carrier of the shipment.[1] *Id.* ¶¶ 28-35, 51-57.  Counts VI, VII, VIII, IX are claims of negligence

---

[1] *But see* Section III(A), *infra* (discussing second cause of action contained within Count I).

against Coyote—in the event it is found to be a freight broker not subject to the Carmack Amendment—Militus, Fastway, and Borgella, respectively, for failing to select a competent carrier or driver. *Id.* ¶¶ 58-85.  Counts II, III, and IV are brought solely against Jama's.  Counts II and III allege that it breached its duties to deliver the shipment in good condition, while Count IV alleges breach of contract as an "alternative" count, "[s]hould Jama's be found not to be the carrier." *Id.* ¶¶ 36-57. Finally, Count X alleges that all defendants violated the Florida Deceptive or Unfair Trade Practices Act ("FDUTPA") by misrepresenting their roles, double brokering the load without authorization, and improperly disposing of the spoiled load. *Id.* ¶¶ 86-101.  Each count alleges damages in the amount of $78,981.92. *Id.* ¶¶ 35, 41, 46, 50, 57, 67, 73, 79, 85, 100.

Coyote has answered the Amended Complaint and filed a cross-claim against Jama's demanding indemnity to the extent of any damages awarded against Coyote. Doc. 34.  Coyote alleges that it served only as the broker for the shipment, while Jama's agreed to be the sole carrier and would be liable for any loss or damage. *Id.*  In turn, Jama's has filed cross-claims against Coyote, asserting that Coyote is the liable party because it never arranged for Jama's to take the shipment after receiving the Rate Confirmation from Borgella, and instead brokered the shipment to Fastway. Doc. 45. Fastway and Militus have not yet appeared, nor has Plaintiff filed proof of service on them.[2]

---

[2] Plaintiff is reminded that Federal Rule of Civil Procedure 4(m) requires each party to be served within 90 days after the complaint is filed.

Jama's and Borgella now move to dismiss the counts against them. Doc. 35. First, they argue that Counts II, III, IV, IX, and X are preempted by the Carmack Amendment, 49 U.S.C. § 14706 *et seq.*, which prohibits state law claims against motor carriers arising from the loss of transported goods. *Id.* at 10-13. They argue that Counts II, III, IX, and X are also preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1), which prohibits claims related to carriers' prices, routes, or services with respect to the transportation of property. *Id.* at 13-15. Further, Jama's and Borgella argue that Counts I and IX fail to state a claim upon which relief can be granted because the Bill of Lading identifies Coyote as the carrier, and Plaintiff concedes the shipment was actually carried by Fastway, rather than Jama's. *Id.* at 15-16. Defendants also move to strike several aspects of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f), including Count I because it groups two causes of action into a single count. *Id.* at 16-18.

Responding in opposition, Plaintiff argues that its claims are not preempted by the Carmack Amendment or the FAAAA because the allegations of gross negligence, willful conduct, and affirmative misrepresentations by the Defendants go beyond the ordinary loss of goods. Doc. 37 at 4-7. Further, the Rate Confirmation is sufficient to demonstrate that Jama's and Borgella took responsibility for the shipment for the purpose of a motion to dismiss. *Id.* at 8-9. Plaintiff also argues that Defendants have not established an adequate basis to strike Plaintiff's pleadings. *Id.* at 9-13.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted).  The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*   Overall, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice" and "should be granted only when the pleading to be stricken has no possible relation to the controversy." *CMR Construction and Roofing, LLC v. American Capital Assurance Corp.*, 2:20-cv-416-JLB-NPM, 2021 WL 354167, *2 (M.D. Fla. Feb.

2, 2021), quoting *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962).[3]

Motions to strike are generally disfavored. *League Logistics, LLC v. Windy City Carriers, Inc.*, 6:20-cv-369-ACC-LHP, 2020 WL 8641600, at *2 (M.D. Fla. Nov. 2, 2020).

## III.   DISCUSSION

### A. Shotgun Pleading

As a threshold matter, the Amended Complaint must be dismissed with leave to amend because it is a shotgun pleading.  As noted *supra*, the Federal Rules of Civil Procedure require a complaint stating a claim for relief to include, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Similarly, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  Complaints that violate either of these rules are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

The Eleventh Circuit has identified several general types of shotgun pleadings. *Id.* at 1322–23.   A complaint which asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," constitutes one type of shotgun pleading. *Id.* at 1323.  Another recognized type is a complaint that

---

[3] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

"commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–33.  Ultimately, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.; see also Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'").

Courts in this Circuit have made clear the dangers of permitting a shotgun pleading to proceed: "Left unchecked, the parties' improper pleadings will complicate appellate review, impede the administration of justice, foster unnecessary expense, and prolong the confusion and complexity of the issues raised by the parties." *zIT Consulting GmbH v. BMC Software, Inc.*, 6:15-cv-1012-RBD-KRS, 2016 WL 231215, *3 (M.D. Fla. Jan. 15, 2016) (overruled on other grounds) (citing *Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364, 367 (11th Cir. 1996); *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (noting that all may be "lost" if a district court fails to "demand repleader" of shotgun pleading)).  Accordingly, when faced with a shotgun pleading, a court should dismiss the complaint and instruct the plaintiff to file a more definite statement. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) (collecting cases), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Here, Defendant moves to strike Count I because it "comingles" two claims. Doc. 35 at 17.  Although Defendant does not use the term "shotgun pleading," the Court agrees that Count I violates Rules 8 and 10 because it groups two causes of action in a single count. *See Weiland*, 792 F.3d at 1322; *see also Ledford v. Peeples*, 657 F.3d 1222, 1239 (11th Cir. 2011) (noting that shotgun pleadings lump claims together in one count); *Kennedy v. Bell S. Telecomm., Inc. (AT&T)*, 546 F. App'x 817, 818, 820 (11th Cir. 2013) (recognizing a "one-claim-per-count rule" under Fed. R. Civ. P. 10(b)).

Count I of the Amended Complaint is titled "breach of contract and/or duties under the Carmack Amendment," and refers to two breaches: a breach of the Carmack Amendment and a breach of the contractual obligations under an unidentified contract of carriage. Doc. 30 ¶¶ 29-34.  Plaintiff's response in opposition to the motion to dismiss makes clear that Plaintiff intended to assert two claims in this count. *See* Doc. 37 at 11 ("The elements of breach of contract and a Carmack claim are alleged in Plaintiff's Amended Complaint sufficient to put Defendants on notice as to the claims made against it[.]").  This is impermissible, as each cause of action must be pleaded separately.  Rather than striking the count as Defendant requests, however, the proper remedy is to dismiss the Amended Complaint without prejudice and with leave to amend in order to correct the defect in Count I.[4]

---

[4] In redrafting the allegations with respect to any state or common law claim it intended to assert in Count I, however, Plaintiff is cautioned to review this Court's rulings regarding preemption in Sections III(B) and (C), *infra*.

Although this conclusion resolves the motion to dismiss, the Court will continue to address the other grounds of Defendants' motion in an effort to facilitate the orderly and efficient resolution of this action. *See zIT Consulting GmbH v. BMC Software, Inc.*, 2016 WL 231215 at *3 n.4.

## B. Carmack Preemption

Defendants move to dismiss several counts of the Amended Complaint as preempted by the Carmack Amendment.  The Carmack Amendment, codified in 49 U.S.C. § 14706 *et seq.*, makes motor carriers in interstate commerce strictly liable to shippers for the loss of goods damaged in transit. *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1296 (11th Cir. 2018); *see* 49 U.S.C. § 14706(a)(1).  It was adopted "to achieve uniformity in rules governing interstate shipments, including the rules governing injury or loss to property shipped." *UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1285 (11th Cir. 2014).  To accomplish this goal, the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods, instead replacing them with its strict liability provision. *Essex*, 885 F.3d at 1300, citing *Smith v. United Parcel Service*, 296 F.3d 1244, 1246 (11th Cir. 2002).  Preemption applies broadly: "[t]he words of the statute are comprehensive enough to embrace *all* damages resulting from *any* failure to discharge a carrier's duty with respect to *any* part of the transportation to the agreed destination." *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29 (1936) (citation omitted) (emphasis added).  "Almost every detail of the subject is covered so

completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913).

The Carmack Amendment's preemption of state law claims is limited in two relevant respects. First, it applies only to "motor carriers," which it defines as an entity "providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The Amendment does not apply to brokers, which are defined as the individuals or companies who sell, offer for sale, negotiate for, or arrange for transportation by motor carrier for compensation, or hold themselves out to do the same. *Id.* § 13102(2). The question of whether an entity is a motor carrier or broker is fact-intensive and case-specific. *Essex*, 885 F.3d at 1302. A party who "holds itself out as the party responsible for the care and delivery of another's property," or who "has agreed with the shipper to accept legal responsibility for that shipment" is a motor carrier rather than a broker, regardless of whether they actually carried the shipment. *Id.* at 1301.

Second, a claim will not be preempted if it is "based on conduct separate and distinct from the delivery, loss of, or damage to goods." *Smith*, 296 F.3d at 1249. For example, a cause of action for an assault that was committed by the delivery driver of an interstate shipment would not be subject to preemption. *Id.* However, any claim that "arises from" a dispute involving the delivery or loss of goods will be preempted. *Id.* In *Smith*, the court found that the plaintiffs' claims of fraud, misrepresentation, and the infliction of emotional distress were preempted because they alleged no conduct that was separate and distinct from UPS's failure to transport and deliver packages.

296 F.3d at 1249.  Similarly, the court in *Mtelehealth, LLC v. United Parcel Serv., Inc.*, 441 F. Supp. 3d 1312, 1318-19 (S.D. Fla. 2019), concluded that a claim of "outright theft" against UPS was preempted because it was still based on damage or loss to plaintiff's goods during transit. *See also Oliver v. Atlas Van Lines, Inc.*, 504 F. Supp. 2d 1213, 1215 (N.D. Ala. 2007) (fraud claim based on allegation that goods were not delivered for the price that defendants estimated was preempted); *Wiley-Tellis v. United Parcel Serv.*, No. CV 05-PWG-2222-S, 2006 WL 8436754, *4 (N.D. Ala. Apr. 5, 2006) (claim for damages for the loss of plaintiff's job resulting from UPS's erroneous delivery of pornographic material to her workplace fell within Carmack preemption).

Here, Defendants argue that Counts II, III, IV, IX, and X are preempted by the Carmack Amendment because they are state law claims that arise from a cargo loss during an interstate shipment. Doc. 35 at 9-12.  Plaintiff responds that these counts allege conduct that goes beyond the ordinary loss of goods and therefore fall within the "separate and distinct" exception. Doc. 37 at 5-6.

The Court agrees with Defendants that Counts II, III, IX, and X are preempted by the Carmack Amendment and do not fall within the exception.  All four counts allege state law causes of action that arise directly from the loss Plaintiff alleges occurred during transport.  Counts II and III allege that Jama's breached the duties it owed to Plaintiff when it accepted the shipment but failed to deliver it in the same condition, causing damages in the amount of the shipment's total value. Doc. 35 at ¶¶ 36-46; *see Rykard v. FedEx Ground Package Sys., Inc.*, 4:08-CV-74 (CDL), 2008 WL 4003629, *2 (M.D. Ga. Aug. 26, 2008) (bailment claim was preempted because it

"arose directly from Defendant's alleged failure in the transportation and delivery of Plaintiff's property.").   Count IX alleges that Junior Borgella, Jamas's agent, acted negligently in coordinating the delivery of the shipment, resulting in its total loss. Doc. 30 ¶¶ 80-85.   Count X is a FDUTPA claim alleging that all Defendants' fraudulent, deceptive, or unfair trade practices in relation to the transport of Plaintiff's goods resulted in the total loss of the shipment. *Id.* ¶¶ 86-101; *see Schwartzkopf v. Werner-Donaldson Moving Servs., Inc.*, 8:05-CV-1364-JDW-MAP, 2005 WL 8160380, *2 (M.D. Fla. Dec. 30, 2005) (FDUTPA claim based on defendants' instructions to delivery personnel was not separate and distinct from the delivery, loss of, or damage to plaintiff's goods).   Plainly, each cause of action arises from the same dispute regarding the transport, delivery, and loss of Plaintiff's shipment.

The fact that each count alleges the same damages—the total value of the destroyed shipment—further demonstrates that Plaintiff has "made no claim for losses that are 'separate and distinct'" from the loss of the pizza shipment in transit. *See Meyer v. Suitable Movers, LLC*, 19-60816-CIV, 2019 WL 3457614, *3 (S.D. Fla. July 31, 2019) (noting each count sought the same damages in the amount of the total loss of plaintiffs' goods).

Plaintiff's arguments to the contrary are unpersuasive. Doc. 37 at 4-6.   The allegations of misrepresentations or deceptive conduct, gross negligence, and willful conduct do not alter the crux of the conduct or the loss for which Plaintiff seeks recovery. *See Smith*, 296 F.3d at 1249 (claims involving fraud and misrepresentation were not based on separate and distinct conduct); *Oliver v. Atlas Van Lines, Inc.*, 504 F.

Supp. 2d at 1215 (same); *cf.* Doc. 37 at 5.  To the extent that *Mlinar v. United Parcel Service, Inc.*, 186 So.3d 997, 1005 (Fla. 2016), on which Plaintiff relies, expands the "separate and distinct" exception beyond the narrow constraints drawn by the federal courts, this Court declines to follow it. *See Juda v. United Van Lines, LLC*, 8:19-CV-1718-MSS-TGW, 2019 WL 11502457, *4 n.4 (M.D. Fla. Dec. 27, 2019) (rejecting plaintiffs' reliance on *Mlinar* because "whether the Carmack Amendment preempts state law is a matter of federal law").  Accordingly, Counts II, III, IX, and X are due to be dismissed with prejudice.[5]

On the other hand, Count IV is not subject to Carmack preemption because Plaintiff has expressly removed it from the Carmack Amendment's coverage.  Count IV is pleaded in the alternative, in the event that Jama's is "found not to be the carrier." Doc. 30 ¶ 48; *see* Fed. R. Civ. P. 8(d)(2), (3) (permitting pleading of alternative or inconsistent claims).  As noted above, the Carmack Amendment applies only to motor carriers, and whether an entity acted as a carrier or a broker is a fact-intensive inquiry. *Essex*, 885 F.3d at 1300.  At the motion to dismiss stage, the court may consider an alternative claim brought in the event that the defendant is determined not to be a

---

[5] Plaintiff argues that it should be afforded the opportunity to conduct discovery regarding Defendants' relationship with the shipment before its claims are dismissed as preempted, which Plaintiff asserts is more appropriate for the summary judgment stage. Doc. 37 at 5-6. However, the authority on which Plaintiff relies is inapposite.  In *Juda*, 2019 WL 11502457 at *4*, the court dismissed the preempted counts but granted leave to amend the complaint in line with the arguments in Plaintiff's opposition motion that the conduct at issue occurred during a move that was entirely within the state of Florida, therefore falling outside of the Carmack Amendment.  *Juda* does not support Plaintiff's request that the Court decline to dismiss causes of action that are plainly preempted until after discovery has been completed. *See also*, *e.g.*, *Smith*, 296 F.3d 1244 (dismissing preempted counts at the 12(b)(6) stage).

carrier. *See, e.g.*, *Orr Motors of Destin, Inc. v. EA Auto, LLC*, 3:18-CV-1627-MCR-HTC, 2019 WL 13199856, *4 (N.D. Fla. July 10, 2019) ("Orr has alternatively brought state law negligence claims against Red Carpet, in the event Red Carpet is deemed to be a broker"); *Nat'l Union Fire Ins. Co. v. Nolan Transportation Grp.*, 1:18-CV-04743-JPB, 2020 WL 11191833, *2 (N.D. Ga. Mar. 17, 2020) ("This Court therefore interprets Plaintiffs' negligence claim as an alternative claim in the event that Defendant is determined to be a broker[.]").  Therefore, Plaintiff's alternative claim against Jama's is not subject to Carmack preemption.

## C. FAAAA Preemption

Defendants also contend that Counts II, III, IX, and X[6] are preempted under the Federal Aviation Administration Authorization Act of 1994.  Plaintiff argues that they are not preempted because they are "not solely related to 'the carrier's prices, routes, or services.'" Doc. 37 at 6-7.

The FAAAA provides, in relevant part,

> [A] State…may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier…or…broker, or freight forwarder with respect to the transportation of property.

---

[6] Plaintiff states that Defendants "do not argue that Plaintiff's breach of contract claims under Count IV are preempted by FAAAA." Doc. 37 at 6 n.2.  Defendant's motion to dismiss is unclear on this point: although one subheading does not list Count IV among the claims Defendants argue are preempted by FAAAA, *see* Doc. 35 at 13, the text of Defendants' argument does. *Id.* at 13, 14.  However, Defendant's reply lists only Counts II, III, IX, and X in its FAAAA preemption arguments. Doc. 41 at 6, 7.  Accordingly, the Court will not consider Count IV in this Section.

49 U.S.C. § 14501(c)(1).  The phrase "other provision having the force and effect of law" encompasses common law claims. *See Nw., Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014) (analyzing this phrase in the context of the Airline Deregulation Act); *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370-71 (2008) (analyzing terms in the FAAAA identically to the same language in the Airline Deregulation Act).  As a result, the FAAAA will preempt state and common law tort claims that relate to the services of a motor carrier or broker with respect to the transportation or movement of property. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261-62 (2013).

Claims involving the mishandling and damage of shipped property during transportation fall directly within the scope of FAAAA preemption.  In *Luccio v. UPS Co.*, 9:16-cv-81703-RLR, 2017 WL 412126, *1 (S.D. Fla. Jan. 31, 2017), for example, the court found that claims for damage to cryopreserved embryos that occurred in transit were preempted by the FAAAA.  *See also Dan's City*, 569 U.S. at 262 (damage occurring when item was in temporary storage while en route to destination would be preempted, while damage occurring after item reached destination would not).

Further, claims alleging that a carrier or a broker was negligent in *arranging* for the transportation of property are also preempted. *See Gauthier v. Hard to Stop LLC*, 6:20-CV-93, 2022 WL 344557, *7 (S.D. Ga. Feb. 4, 2022) (FAAAA "preempts negligence claims which are sufficiently connected to or have a significant impact on brokers' core bargained-for services: arranging for the transportation of property"); *Aegis Syndicate 1225 v. FedEx Custom Critical, Inc.*, 20-23722-CIV, 2021 WL 5014102, *5

(S.D. Fla. June 28, 2021) (claim asserting that FedEx was negligent in hiring subcontractor without verifying insurance was preempted because it was "aimed at the core of FedEx's services…and more than tenuously relates to the transportation of goods"); *Bailey v. Bell-Rich Transportation, LLC*, 3:19-CV-461-MMH-JBT, 2020 WL 3440585, *6 n.9 (M.D. Fla. June 23, 2020) (collecting cases finding that negligent hiring claims relate to the core services provided by a broker and are therefore preempted); *Nat'l Union Fire Ins. Co. v. Nolan Transportation Grp.*, 1:18-CV-04743-JPB, 2020 WL 11191833, *3 (N.D. Ga. Mar. 17, 2020) (dismissing claims against broker who failed to verify liability insurance as preempted by FAAAA); *Orr Motors of Destin, Inc. v. EA Auto, LLC*, 3:18-cv-1627-MCR-HTC, 2019 WL 13199856, *7 (N.D. Fla. July 10, 2019) (collecting cases).

Here, Counts II, III, IX, and X are all preempted by the FAAAA because they directly relate to services offered during the transportation of Plaintiff's property from New Hampshire to Florida. Counts II and III each assert that Jama's breached the duties it owed to Plaintiff in failing to deliver the shipment in good condition, while Count IX alleges that Junior Borgella was negligent in making arrangements for the shipment. Plainly, each of these falls within the FAAAA's scope, *see*, *e.g.*, *Luccio*, 2017 WL 412126 at *1; *Gauthier*, 2022 WL 344557 at *7, and Plaintiff does not make a substantive argument to the contrary. Rather, Plaintiff focuses on its allegation in Count X that Jama's misrepresented its role as the carrier, which Plaintiff states "go[es] beyond that which concerns Jama's prices, routes, or services." Doc. 37 at 7. The Court disagrees. Plaintiff alleges that all of the defendants engaged in

misrepresentations that allowed them to "double broker" the shipment without Plaintiff's knowledge or consent, resulting in the "total loss of the food product" when it arrived "spoiled." Doc. 30 ¶¶ 88-100.  At its crux, this cause of action is directly related to the actions of the carriers and/or brokers in arranging for and transporting Plaintiff's property.  Therefore it, like Counts II, II, and IX, is preempted by the FAAAA.

### D. Counts I and IX

Defendants next seek to dismiss Counts I and IX for failure to state a claim upon which relief can be granted.  Defendants argue that these counts must be dismissed because the Bill of Lading attached to the Amended Complaint lists Coyote as the carrier of the shipment, therefore demonstrating that Jama's was not. Doc. 35 at 15-16.  This argument is meritless.  First, the existence of one carrier does not preclude the liability of other carriers, because the Carmack Amendment expressly provides for the liability of more than one carrier.  The Amendment states that, in addition to the carrier who issues the Bill of Lading, "any other carrier that delivers property and is providing transportation or service…[is] liable to the person entitled to recover under the receipt or bill of lading." 49 U.S.C. § 14706(a)(1).  Moreover, the "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier." *Id.*; *cf.* Doc. 35 at 16 ("motor carrier liability under the Carmack Amendment requires that a Bill of Lading be issued by the motor carrier responsible for transporting a shipment.").  Therefore, the fact that Jama's was not listed as the carrier on the Bill of Lading is not dispositive of its liability.

Similarly, Plaintiff's identification of Fastway as the carrier who actually transported the shipment does not preclude Jama's liability. *Cf. id.* at 15-16. In addition to the statute's acknowledgement that multiple carriers may be liable for a shipment, the Eleventh Circuit has made clear that a "motor carrier" as defined by the Carmack Amendment need not be the party who actually transports the shipment. In *Essex*, 885 F.3d 1292, 1301, the court held that "when a party holds itself out as the party responsible for the care and delivery of another's property, it cannot outsource its contractual responsibility by outsourcing the care and delivery it agreed to provide." Plaintiff's allegations and exhibits are consistent with this principle. The Bill of Lading identifies Coyote Logistics as the carrier. Doc. 30-2. The Rate Confirmation Load— which Junior Borgella signed—states that Coyote acted as the broker in contracting Jama's as the carrier. Doc. 30-1. But Plaintiff alleges that the shipment was actually delivered by a third company, Fastway, contrary to the contract's prohibition against "double brokering." Doc. 30 ¶ 88. For the purpose of a motion to dismiss, the evidence is sufficient to demonstrate that Borgella and Jama's held themselves out as responsible for the shipment, regardless of whether they outsourced delivery to Fastway. *See Essex*, 88f F.3d at 1301.

Accordingly, the exhibits do not contradict the allegations of the Amended Complaint nor demonstrate that Counts I and IX fail to state a claim upon which relief may be granted.

## E. Motion to Strike

### a. *"Willful, Wanton and Reckless Misconduct"*

Defendants also move to strike various portions of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f).  Defendants argue that Plaintiff's claims of "'willful, wanton and reckless misconduct,' as scattered throughout the Complaint, must be stricken" because the factual allegations are insufficiently specific to support these descriptors.  Doc. 35 at 18-19.  However, Defendants fail to provide any valid authority for its statement that a higher degree of specificity is required at the pleading stage for claims involving reckless, willful, and wanton misconduct, because neither of the cases on which they rely support this claim. *See* Doc. 35 at 18.  In *Rommell v. Automobile Racing Club of America, Inc.*, 964 F.2d 1090, 1096-97 (11th Cir. 1992), the court was evaluating the sufficiency of evidence presented in support of a motion for summary judgment, not the allegations in a complaint.  And *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791, 815-18 (11th Cir. 1987), is a concurring opinion about the Eighth Amendment's deliberate indifference standard that has no bearing on the instant case.  In any event, the Court finds that the facts alleged in the Amended Complaint are adequate to support a theory of recklessness or willfulness in addition to negligence.

Moreover, Defendants have failed to demonstrate any prejudice, confusion, or other harm that results from the inclusion of this language. *See U.S. ex rel. Chabot v. MLU Servs., Inc.*, 544 F.Supp.2d 1326, 1330 (M.D. Fla. 2008) ("A motion to strike

19

should be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party… Because this standard is rarely met, motions to strike are generally disfavored by the Court and are often considered time wasters.") (citations and quotations omitted).  Defendants have not established a legitimate basis for striking the language, and the Court declines to do so.

### b.  *Requests for Attorney's Fees*

Lastly, Defendants argue that Plaintiff's requests for attorney's fees "as sought in all Counts of the Complaint" must be stricken, because the Carmack Amendment does not permit the imposition of attorney's fees. Doc. 35 at 19-20.  Plaintiff responds that the Carmack Amendment does not automatically preempt attorney's fee claims, and alleging a specific basis for attorney's fees is not required at the pleading stage. Doc. 37 at 12-13.  The Court will analyze Defendants' request only with respect to the counts against Jama's that the Court has not concluded are preempted: Counts I and IV.

Many courts in this Circuit have recognized that attorney's fees are not available under the Carmack Amendment. *See*, *e.g.*, *PolyGram Group Dist., Inc. v. Transus, Inc.*, 990 F.Supp. 1454, 1460 (N.D. Ga. 1997); *Fine Foliage of Fla., Inc. v. Bowman Transp., Inc.*, 698 F.Supp. 1566, 1576 (M.D. Fla. 1988); *Travelers Property Casualty Co. of Am. v. ASF Intermodal, LLC*, 1:16-cv-2892-WSD, 2017 WL 894445, *3 (N.D. Ga. March 7, 2017); *Scotlynn USA Division, Inc. v. Cold Ground Transport, LLC*, 2:15-cv-152-SPC-CM, 2016 WL 6066682, *3 (M.D. Fla. Oct. 14, 2016); *Scotlynn USA Division, Inc. v. Singh*,

2:15-cv-381-JES-MRM, 2016 WL 4734396, *2 (M.D. Fla. Sept. 9, 2016).  Defendant is therefore correct that attorney's fees are not an available remedy for Count I, to the extent that it alleges a violation of the Carmack Amendment.  Plaintiff's request for attorney's fees in Count I is due to be stricken.

Count IV, on the other hand, is expressly pleaded outside of the Carmack Amendment, as discussed *supra* in Section III(B).  The Carmack Amendment therefore has no applicability to its available remedies. *See UPS Supply Chain Solutions, Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1293-94 (enforcement action based on contract's indemnity clause providing for attorney's fees was not preempted by Carmack Amendment); *J.B. Hunt Transport, Inc. v. S&D Transport., Inc.*, 11-62096-CIV-Dimitrouleas, 2012 WL 12862644, *9 n.6 (S.D. Fla. Dec. 5, 2012) (attorney's fees not prohibited by Carmack Amendment because the parties opted out of the application of the Carmack Amendment in a private contract).

However, the request for attorney's fees in Count IV is due to be stricken for a different reason.  Under Florida law a party is not entitled to attorney's fees unless a specific statutory or contractual provision so provides. *Int'l Fidelity Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1335 (11th Cir. 2018).  Neither the Amended Complaint nor Plaintiff's response in opposition to Defendants' motion identified any such basis.  While Plaintiff points out that FDUTPA allows for the recovery of attorney's fees, it does not identify any similar provision for its common law claims. Plaintiff also does not point to a specific contractual provision between the parties that would permit it to seek attorney's fees in the event of a breach.  Accordingly, Plaintiff's

request for attorney's fees in Count IV is also due to be stricken. *See Worlds v. Home Depot U.S.A., Inc.*, 8:21-cv-1534-CEH-SPF, 2022 WL 218781, *2 (M.D. Fla. Jan. 25, 2022) (Honeywell, J.) (granting motion to strike request for attorney's fees where plaintiff provided no authority to support its claim of entitlement to attorney's fees in its complaint or motion response); *Resmondo v. New Hampshire*, 8:13-cv-2907-JSM-E_J, 2013 WL 6894857 (M.D. Fla. Dec. 13, 2013) (Moody, J.) (granting motion to strike request for attorney's fees where plaintiff alleged an invalid basis in its motion response); *cf.* Doc. 37 at 12, citing *Caufield v. Cantele*, 837 So.2d 371, 377-78 (Fla. 2002) (a claim for attorney's fees will not be *waived* solely because its basis was not in the pleadings).

## IV.   CONCLUSION

The Amended Complaint is dismissed, without prejudice and with leave to amend, because it is a shotgun pleading that combines two causes of action in Count I.   In filing a second amended complaint, however, Plaintiff is advised to avoid including any claim that is preempted by the Carmack Amendment and/or FAAAA, including breach of Jama's bailment obligations, tort claims against Jama's, negligence of Junior Borgella, and a violation of the FDUTPA. *See* Sections III(B) and (C), *supra*. These state law causes of action are preempted by the Carmack Amendment and/or the FAAAA, and are therefore due to be dismissed with prejudice.   Moreover, Plaintiff's requests for attorney's fees in Counts I and IV are due to be stricken because Plaintiff has not identified a valid basis for their recovery.   The motion to dismiss and/or strike is otherwise denied.

Accordingly, it is **ORDERED**:

1.  Defendants Jama's Express, LLC, and Junior Borgella's Motion to Dismiss (Doc. 35) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2.  Plaintiff's Amended Complaint (Doc. 30) is **DISMISSED, without prejudice, as a shotgun pleading.**

3.  Plaintiff is granted leave to file a second amended complaint, which cures the deficiencies discussed in this Order, within **FOURTEEN (14) DAYS** of the date of this Order. Failure to file an amended complaint within the time prescribed will result in the dismissal of this action, without prejudice, without further notice.

4.  **Counts II, III, IX, and X are DISMISSED with prejudice** as preempted by the Carmack Amendment and the Federal Aviation Administration Authorization Act.

5.  Plaintiff's request for attorney's fees in Counts I and IV is **STRICKEN**.

**DONE** and **ORDERED** in Tampa, Florida on December 19, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties